DAVID K. TELLEKSON (*pro hac vice* forthcoming)
dtellekson@fenwick.com
JONATHAN G. TAMIMI (CSB No. 305493)
jtamimi@fenwick.com
FENWICK & WEST LLP
401 Union St., 5th Floor
Seattle, WA  98101
Telephone:  206.389.4510
Facsimile:   206.389.4511

REANNE SWAFFORD-HARRIS (CSB No. 305558)
rswaffordharris@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Blvd., Ste. 300
Santa Monica, CA 90401
Telephone:  310.434.5400
Facsimile:   650.938.5200

Attorneys for Plaintiff
NATIONAL PRODUCTS INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL PRODUCTS INC.,<br><br>   Plaintiff,<br><br> v.<br><br>THE JOY FACTORY INC.,<br><br>   Defendant. | Case No.: 8:23-cv-01918<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff National Products, Inc. ("NPI" or "Plaintiff") brings this action against Defendant The Joy Factory Inc. ("Joy Factory" or "Defendant") for an injunction, damages, and other appropriate relief to stop Joy Factory from violating NPI's patent rights.  NPI states and alleges as follows:

## THE PARTIES

1.     NPI is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at 8410 Dallas Ave S., Seattle, Washington 98108.

2.     NPI is a market leader in the design, manufacture, and sale of innovative docking cradles and protective cover products, including docking cradles and protective covers for tablets, cellular phones, and other portable devices, which are used, for example, in cars, trucks, bikes, planes, boats and motorcycles.

3.     Upon information and belief, Joy Factory is a corporation organized and existing under the laws of the State of California having its principal place of business at 16811 Hale Avenue, Bldg. D, Irvine, CA 92606.

4.     Upon information and belief, Joy Factory is in the business of providing protective covers and docking systems for portable electronic devices, including the products that are at issue in this lawsuit.  Upon information and belief, Joy Factory advertises, markets, and sells its products, including the products that are the subject of the patent infringement alleged in this lawsuit, to the public throughout the United States, including within this judicial district.

## NATURE OF THE ACTION

5.     This is a civil action for infringement of U.S. Patent Nos. 7,495,895 (the '895 patent); 9,195,279 ("the '279 patent"); 9,602,639 ("the '639 patent"); 9,632,535 ("the '535 patent"); 9,706,026 ("the '026 patent"); 11,165,458 ("the '458 patent"); and for provisional damages related to U.S. Patent Application No. 17/689,728 ("the '728 application"), published as U.S. Patent Pub. No.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

2022/0200649 A1, issued as U.S. Patent No. \*\*,\*\*\*,\*\*\*[1], under the patent laws of the United States, including, without limitation, 35 U.S.C. § 1 *et seq.*

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Joy Factory.  Upon information and belief, Joy Factory maintains a regular and established place of business in this judicial district.  This Court also has personal jurisdiction over Joy Factory because, upon information and belief, Joy Factory has committed, aided, abetted, contributed to, and/or participated in the commission of patent infringement in this judicial district.

8.      Upon information and belief, Joy Factory sells and offers to sell its infringing products directly through its website to the public throughout the United States, including this judicial district.

9.      Upon information and belief, numerous Joy Factory has its headquarters and principal place of business within this judicial district.  For example, Joy Factory the following address on its main webpage: 16811 Hale Avenue, Bldg. D, Irvine, CA 92606.  https://thejoyfactory.com/.  Upon information and belief, The Joy Factory has listed this same address as its principal place of business with the California Secretary of State.

10.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because Joy Factory has committed acts of infringement in this District, and upon information and belief, Joy Factory has a regular and established place of business in this District.

## THE '895 PATENT

11.      On February 24, 2009, the '895 patent, entitled "Protective Cover For Device Having Touch Screen" was duly and legally issued to Jeffrey D. Carnevali.

---

[1] NPI will amend its complaint to add this patent once issued.

The '895 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

12.     NPI is the owner, by assignment, of all right, title, and interest in the '895 patent, including the rights to exclude others and to sue and recover past and future damages for infringement.

13.     To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '895 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '895 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '895 patent.

14.     A true and correct copy of the '895 patent is attached as **Exhibit A**.

### THE '279 PATENT

15.     On November 24, 2015, the '279 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali.  The '279 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

16.     NPI is the owner, by assignment, of all right, title, and interest in the '279 patent, including the rights to exclude others and to sue and recover past and future damages for infringement.

17.     To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '279 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

3

article with the '279 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '279 patent.

18. A true and correct copy of the '279 patent is attached as **Exhibit B**.

## THE '639 PATENT

19. On March 21, 2017, the '639 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '639 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

20. NPI is the owner, by assignment, of all right, title, and interest in the '639 patent, including the rights to exclude others and to sue and recover past and future damages for infringement.

21. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '639 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '639 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '639 patent.

22. A true and correct copy of the '639 patent is attached as **Exhibit C**.

## THE '535 PATENT

23. On April 25, 2017, the '535 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '535 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

24. NPI is the owner, by assignment, of all right, title, and interest in the '535 patent, including the rights to exclude others and to sue and recover past and

4

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

future damages for infringement.

25.     To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '535 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '535 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '535 patent.

26.     A true and correct copy of the '535 patent is attached as **Exhibit D**.

### **THE '026 PATENT**

27.     On July 11, 2017, the '026 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali.  The '026 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

28.     NPI is the owner, by assignment, of all right, title, and interest in the '026 patent, including the rights to exclude others and to sue and recover past and future damages for infringement.

29.     To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '026 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '026 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '026 patent.

30.     A true and correct copy of the '026 patent is attached as **Exhibit E**.

5

**THE '458 PATENT**

31.     On November 2, 2021, the '458 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali.  The '458 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

32.     NPI is the owner, by assignment, of all right, title, and interest in the '458 patent, including the rights to exclude others and to sue and recover past and future damages for infringement.

33.     To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '458 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '458 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '458 patent.

34.     A true and correct copy of the '458 patent is attached as **Exhibit F**.

**THE '728 APPLICATION**

**(U.S. PATENT PUBLICATION NO. 2022/0200649 A1)**

35.     On June 23, 2022, the '728 application, entitled "Docking Sleeve With Electrical Adapter," was published by the United States Patent and Trademark Office as Publication No. 2022/0200649 A1.  The '728 application is generally directed toward a protective cover for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

36.     NPI is the owner, by assignment, of all right, title, and interest in the '728 application, and will hold the same rights in the issued patent, including the rights to exclude others and to sue and recover past and future damages for infringement.

6

37.     A true and correct copy of Publication No. 2022/0200649 A1 is attached as **Exhibit G**.

**COUNT I**

**INFRINGEMENT OF UNITED STATES PATENT NO. 7,495,895**

38.     NPI realleges and incorporates by reference the allegations in paragraphs 1–37 above.

39.     Joy Factory has directly infringed and continues to directly infringe at least claim 1 of the '895 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States protective covers for and used with portable electronic device, including but not limited to The Joy Factory's aXtion Bold line of waterproof protective covers:

## aXtion Bold MPS for iPad 10.9-inch 10th Gen

Lockable, military-grade certified, water-resistant, rugged case with MagConnect compatibility, with built-in rotating hand strap, and kickstand

SKU: CWA653KL
MSRP: $139.99

The aXtion Bold MPS is a rugged and lockable case for iPad 10.9" 10th Gen. It features military-grade certified shockproof holding a MIL-STD-810H certification in addition it is water-resistant. Other protective features include: anti-theft security locking plate for use in public spaces; heavy-duty screen and camera lens protectors built to protect your devices from accidental scratches; port and button covers to ensure dust and debris doesn't enter the devices crevices; and reinforced corners to help absorb shock in case of accidental drops. The case also features a rotating, easy to clean silicone hand strap and a multi-angle kickstand.

This unique case is compatible with any of our MagConnect mounts. With a wide range of mount configurations, there is undoubtedly one that is suitable to fit your needs. These mounts enable operators to work hands-free. To expand on this mobility, the case can be paired with an optional Universal Shoulder Strap.

- Compatible with iPad 10.9" 10th Gen



40.     The protective cover depicted above is exemplary.

41.     Inspection of the aXtion Bold products demonstrates that they meet each and every element of claim 1 of the '895 patent, either literally or by the doctrine of equivalents.

42.     For example, the aXtion Bold products comprise a protective cover for a device having a touch-sensitive screen.  The aXtion Bold products are further formed of a substantially continuous flexible material, comprising a mask portion

7

substantially surrounded with a plurality of interconnected curtain portions extending therefrom and forming therebetween a plurality of interconnected lip portions, the mask, curtain and lip portions forming a cavity therebetween with the lip portions surrounding a mouth opening thereinto.

43.     The aXtion Bold products mask portion further comprises a relatively thicker frame portion surrounding a relatively thinner recessed integral window portion formed of a substantially optically transparent flexible membrane.  The substantially continuous flexible material further comprises a substantially optically transparent material, and the cover further comprises a unitary combination of the mask, curtain and lip portions with the curtain portions being contiguous with the mask portions, and different curtain portions being contiguous with corresponding ones of the lip portions:



Case Specifications:
Dimensions: 10.82" x 8.09" x 0.87"
Weight: 1.38 lbs
Shockproof Rating: Military Grade Shockproof Standard (MIL-STD-810H)
Compatible Models: Apple iPad (10th Generation) A2696, A2757, A2777

Case Features:
1. Apple Pencil holder
2. Molded-in buttons
3. Rear facing camera lens cover
4. MagConnect adapter for compatibility with all MagConnect mounts
5. Rotating, easy-to-clean, adjustable, silicone hand strap
6. Security slot for security cable
7. Rotating, multi-angle, slide out kickstand
8. Port covers
9. Accessories port for optional shoulder strap (CWX202)
10. MIL-STD-810H Drop-proof certification with reinforced corners
11. Built-in screen protector
12. Ambient light sensor compatibility
13. Power button cover with Touch ID compatibility

44.     Upon information and belief, Joy Factory has induced and continues to induce infringement of one or more claims of the '895 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the protective covers claimed in the '895 patent, including the aXtion Bold products.  The use, without authorization, of the claimed protective covers constitutes infringement, literally or under the doctrine of equivalents, of one or

8

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

more claims of the '895 patent by such customers or third parties. Joy Factory's acts of inducement include: providing its customers with the protective covers and intending customers to use them according with their intended purpose; advertising these products and their intended use through its own and third-party websites (for example, https://thejoyfactory.com/axtion-series/bold/; offering technical support to its customers for these products (for example, https://thejoyfactory.com/contact-support/); and providing instructions on how to use these products (for example, https://store-4ccc5gfp0c.mybigcommerce.com/content/qsg/qsg01653-axtionbold-mps-case-apple-ipad-10-gen-10-9-inches-cwa653kl.pdf).

45. As a direct and proximate consequence of Joy Factory's infringement of the '895 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless Joy Factory is enjoined from infringing the '895 patent.

46. Joy Factory has had actual knowledge of the '895 patent and its infringement thereof since at least August 11, 2023, when NPI notified Joy Factory that the manufacture, sale, offering for sale, importation, and/or use of the aXtion Bold protective covers infringes the '895 patent. A true and correct copy of the NPI notice letter is attached as **Exhibit H**.

47. Upon information and belief, Joy Factory's continued infringement of the '895 patent is willful.

## COUNT II

## INFRINGEMENT OF UNITED STATES PATENT NO. 9,195,279

48. NPI realleges and incorporates by reference the allegations in paragraphs 1–47 above.

49. Joy Factory has directly infringed and continues to directly infringe at least claim 10 of the '279 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to

9

the Joy Factory's aXtion Volt line of products.

50.    Inspection of the aXtion Volt line of products demonstrates that they meet each and every element of claim 10 of the '279 patent, either literally or by the doctrine of equivalents.

51.    For example, Joy Factory's website describes its aXtion Volt line of products as comprising the docking system of claim 10:



52.    The aXtion Volt products shown above are exemplary.

53.    As shown above, the aXtion Volt products comprise a protective cover for an electronic device, the cover comprising a flexible protective shell comprising, a panel and a skirt surrounding the panel, wherein the panel and skirt form an interior cavity therebetween, and the skirt forming, a mouth opening that communicates with the interior cavity, wherein the interior cavity is configured and arranged to receive the electronic device.

54.    The aXtion Volt line of products further include an adapter fixedly positioned in the shell, the adapter comprising a male plug comprising a plurality of connectors extending into the interior cavity of the shell in an arrangement for

mating with a female socket of the device, and a contactor comprising a plurality of contacts adjacent to an exterior of the shell and electrically coupled to one or more of the connectors of the plug.



55.    Additionally, the aXtion Volt line of products further includes a docking cradle comprising a tray configured to receive the cover and a docking connector comprising a plurality of contacts positioned to connect with one or more of the plurality of contacts of the contactor.



56.     The cover of the aXtion Volt line of products further comprises a positioning interface disposed on the shell and defining a rim around the contactor of the adapter and the docking cradle further comprises a base receiver configured to mate with the positioning interface of the cover.

57.     Upon information and belief, Joy Factory has induced and continues to induce infringement of one or more claims of the '279 patent, including but not limited to claim 10, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '279 patent, including by using the aXtion Volt protective covers with the docking cradles, and the combined systems.  The use, without authorization, of the protective covers combined with the docking cradles, and docking systems constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '279 patent by such customers or third parties.  Joy Factory's acts of inducement include: providing its customers with docking systems and the individual components thereof and intending customers to use them as intended; advertising these products and their intended use through its own and third-party websites (for example, https://product.thejoyfactory.com/axtion-volt-wireless-charging; offering technical support to its customers for these products (for example, https://thejoyfactory.com/contact-support/); and providing instructions on how to use these products (for example, https://datasheet-frontendtjf-v1.netlify.app/?id=2053&sku=DEU322).

58.     Additionally, upon information and belief, Joy Factory infringes one or more claims of the '279 patent, including but not limited to claim 10, under 35 U.S.C. § 271(f)(1) by supplying, or causing to be supplied, in or from the United States all or a substantial portion of the components of the patented invention, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components—as described in the preceding paragraph—outside of the United States in a manner that would infringe the patent

if such combination occurred within the United States.

59. Upon information and belief, Joy Factory has contributed to and continues to contribute to the infringement of one or more claims of the '279 patent, including but not limited to claim 10, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to the aXtion Volt protective covers and docking cradles. These components supplied by Joy Factory are key components to the docking systems claimed in the '279 patent. When, for example, a protective cover is used with the docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '279 patent. Upon information and belief, Joy Factory supplied and continues to supply these components with the knowledge of the '279 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '279 patent. Further, Joy Factory knows that these components are especially made and/or especially adapted for use as claimed in the '279 patent. Moreover, Joy Factory knows that there is no substantial non-infringing use of these components.

60. Additionally, upon information and belief, Joy Factory infringes one or more claims of the '279 patent, including but not limited to claim 10, under 35 U.S.C. § 271(f)(2) by supplying, or causing to be supplied, in or from the United States components of the patented invention that are especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use—as described in the preceding paragraph—where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

61. As a direct and proximate consequence of Joy Factory's infringement

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

of the '279 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless Joy Factory is enjoined from infringing the '279 patent.

62.    Joy Factory has had actual knowledge of the '279 patent and its infringement thereof since at least August 11, 2023, when NPI notified Joy Factory that the manufacture, sale, offering for sale, importation, and/or use of the aXtion Volt products infringes the '279 patent. A true and correct copy of the NPI notice letter is attached as **Exhibit H**.

63.    Upon information and belief, Joy Factory's continued infringement of the '279 patent is willful.

## COUNT III

## INFRINGEMENT OF UNITED STATES PATENT NO. 9,602,639

64.    NPI realleges and incorporates by reference the allegations in paragraphs 1–63 above.

65.    Joy Factory has directly infringed and continues to directly infringe at least claim 1 of the '639 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to the Joy Factory's aXtion Volt line of products.

66.    Inspection of the aXtion Volt line of products demonstrates that they meet each and every element of claim 1 of the '639 patent, either literally or by the doctrine of equivalents.

67.    For example, Joy Factory's website describes its aXtion Volt line of products as comprising the docking system of claim 1:

14

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW



68. The aXtion Volt products shown above are exemplary.

69. As shown above, the aXtion Volt products comprise a flexible protective shell comprising a panel and a skirt surrounding the panel, wherein the panel and skirt form an interior cavity therebetween, and the skirt forming a mouth opening that communicates with the interior cavity, wherein the interior cavity is configured and arranged to receive an electronic device, wherein the shell is configured and arranged to at least partially cover one of a back face or a front face of the electronic device, at least partially cover a plurality of side faces of the electronic device, and extend around a peripheral edge of another one of the front face or the back face of the electronic device to secure the electronic device within the shell.

70. The protective shell of the aXtion Volt products includes an adapter fixedly positioned in the shell, the adapter comprising a male plug comprising a plurality of connectors extending into the interior cavity of the shell in an arrangement for mating with a female socket of the electronic device, and a contactor comprising a plurality of contacts adjacent to an exterior of the shell and

electrically coupled to one or more of the connectors of the plug.



71.     The aXtion Volt products further include a docking cradle comprising a tray configured to receive the cover, a movable arm coupled to the tray, and a docking connector disposed opposite the movable arm and comprising a plurality of contacts positioned to connect with one or more of the plurality of contacts of the contactor, wherein the movable arm is configured and arranged for movement between an extended position with the moveable arm extended away from the tray and a close position with the moveable arm close to the tray:





16

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

72.     Upon information and belief, Joy Factory has induced and continues to induce infringement of one or more claims of the '639 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '639 patent, including by providing said docking systems and individual components thereof and intending third parties to use them as intended.  The use, without authorization, of the claimed docking systems constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '639 patent by such customers or third parties.  Joy Factory's acts of inducement include: providing its customers with the docking systems and components thereof and intending customers to use them; advertising these products and their intended use through its own and third-party websites (for example, https://product.thejoyfactory.com/axtion-volt-wireless-charging; offering technical support to its customers for these products (for example, https://thejoyfactory.com/contact-support/); and providing instructions on how to use these products (for example, https://datasheet-frontendtjf-v1.netlify.app/?id=2053&sku=DEU322).

73.     Additionally, upon information and belief, Joy Factory infringes one or more claims of the '639 patent, including but not limited to claim 1, under 35 U.S.C. § 271(f)(1) by supplying, or causing to be supplied, in or from the United States all or a substantial portion of the components of the patented invention, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components—as described in the preceding paragraph—outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

74.     Upon information and belief, Joy Factory has contributed to and continues to contribute to the infringement of one or more claims of the '639 patent, including but not limited to claim 1, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems

17

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

that comprise the patented invention, including but not limited to the docking cradles and protective covers identified above.  These components supplied by Joy Factory are key components to the docking systems claimed in the '639 patent.  When, for example, a protective cover is used with the docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '639 patent.  Upon information and belief, Joy Factory supplied and continues to supply these components, with the knowledge of the '639 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '639 patent.  Further, Joy Factory knows that these components are especially made and/or especially adapted for use as claimed in the '639 patent.  Moreover, Joy Factory knows that there is no substantial non-infringing use of these components.

75.    Additionally, upon information and belief, Joy Factory infringes one or more claims of the '639 patent, including but not limited to claim 1, under 35 U.S.C. § 271(f)(2) by supplying, or causing to be supplied, in or from the United States components of the patented invention that are especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use—as described in the preceding paragraph—where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

76.    As a direct and proximate consequence of Joy Factory's infringement of the '639 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless Joy Factory is enjoined from infringing the '639 patent.

77.    Joy Factory has had actual knowledge of the '639 patent and its infringement thereof since at least August 11, 2023, when NPI notified Joy Factory

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

that the manufacture, sale, offering for sale, importation, and/or use of the aXtion Volt products infringes the '639 patent. A true and correct copy of the NPI notice letter is attached as **Exhibit H**.

78.   Upon information and belief, Joy Factory's continued infringement of the '639 patent is willful.

## COUNT IV

## INFRINGEMENT OF UNITED STATES PATENT NO. 9,632,535

79.   NPI realleges and incorporates by reference the allegations in paragraphs 1–78 above.

80.   Joy Factory has directly infringed and continues to directly infringe at least claim 15 of the '535 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to the Joy Factory's aXtion Volt line of products.

81.   Inspection of the aXtion Volt line of products demonstrates that they meet each and every element of claim 15 of the '535 patent, either literally or by the doctrine of equivalents.

82.   For example, Joy Factory's website describes its aXtion Volt line of products as comprising the docking system of claim 15:



19

83. The aXtion Volt products shown above are exemplary.

84. As shown above, the aXtion Volt products comprise a flexible protective shell comprising a panel and a skirt surrounding the panel, wherein the panel and skirt form an interior cavity of the shell, and the skirt forming a mouth opening that communicates with the interior cavity, wherein the interior cavity is configured and arranged to receive an electronic device with a portion of the shell at least partially covering a back surface and extending over a peripheral edge of a front surface of the electronic device to capture the electronic device within the interior cavity of the shell.

85. The aXtion Volt products further include an adapter fixedly positioned in the shell, the adapter comprising a male plug comprising a plurality of connectors extending into the interior cavity of the shell in an arrangement for mating with a female socket of the electronic device, a contactor comprising a plurality of contacts adjacent to an exterior of the shell and electrically coupled to one or more of the connectors of the male plug, and a positioning interface disposed on the shell and defining a rim around the contactor of the adapter to guide proper mating of the contactor of the adapter to an external connector.



86. Upon information and belief, Joy Factory has induced and continues to

induce infringement of one or more claims of the '535 patent, including but not limited to claim 15, by inducing its customers and other third parties to use without authorization the protective covers claimed in the '535 patent.  The use, without authorization, of the claimed protective covers constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '535 patent by such customers or third parties.  Joy Factory's acts of inducement include: providing its customers with the claimed protective covers; advertising these products and their intended use through its own and third-party websites (for example, https://product.thejoyfactory.com/axtion-volt-wireless-charging; offering technical support to its customers for these products (for example, https://thejoyfactory.com/contact-support/); and providing instructions on how to use these products (for example, https://datasheet-frontendtjf-v1.netlify.app/?id=2053&sku=DEU322).

87.    Additionally, upon information and belief, Joy Factory infringes one or more claims of the '535 patent, including but not limited to claim 15, under 35 U.S.C. § 271(f)(1) by supplying, or causing to be supplied, in or from the United States all or a substantial portion of the components of the patented invention, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components—as described in the preceding paragraph—outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

88.    Upon information and belief, Joy Factory has contributed to and continues to contribute to the infringement of one or more claims of the '535 patent, including but not limited to claim 18, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to the aXtion Volt products, including the claimed protective cover and docking cradles.  These components supplied by Joy Factory are key components to the docking systems

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

claimed in the '535 patent.  When, for example, a protective cover is combined with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '535 patent.  Upon information and belief, Joy Factory supplied and continues to supply these components with the knowledge of the '535 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '535 patent.  Further, Joy Factory knows that these components are especially made and/or especially adapted for use as claimed in the '535 patent.  Moreover, Joy Factory knows that there is no substantial non-infringing use of these components.

89.     Additionally, upon information and belief, Joy Factory infringes one or more claims of the '535 patent, including but not limited to claim 18, under 35 U.S.C. § 271(f)(2) by supplying, or causing to be supplied, in or from the United States components of the patented invention that are especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use—as described in the preceding paragraph—where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

90.     As a direct and proximate consequence of Joy Factory's infringement of the '535 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless Joy Factory is enjoined from infringing the '535 patent.

91.     Joy Factory has had actual knowledge of the '535 patent and its infringement thereof since at least August 11, 2023, when NPI notified Joy Factory that the manufacture, sale, offering for sale, importation, and/or use of the aXtion Volt products infringes the '535 patent. A true and correct copy of the NPI notice letter is attached as **Exhibit H**.

92.     Upon information and belief, Joy Factory's continued infringement of the '535 patent is willful.

## COUNT V

## INFRINGEMENT OF UNITED STATES PATENT NO. 9,706,026

93.     NPI realleges and incorporates by reference the allegations in paragraphs 1–92 above.

94.     Joy Factory has directly infringed and continues to directly infringe at least claim 11 of the '026 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to the Joy Factory's aXtion Volt line of products.

95.     Inspection of the aXtion Volt line of products demonstrates that they meet each and every element of claim 11 of the '026 patent, either literally or by the doctrine of equivalents.

96.     For example, Joy Factory's website describes its aXtion Volt line of products as comprising the docking system of claim 11:



97.     The aXtion Volt products shown above are exemplary.

23

98.     As shown above, the aXtion Volt products comprise a protective cover for an electronic device, the cover comprising a shell forming an interior cavity to receive the electronic device, a male plug comprising a plurality of connectors extending into the interior cavity of the shell in an arrangement for mating with a female socket of the device, and a contactor comprising a plurality of contacts adjacent to an exterior of the shell and electrically coupled to one or more of the connectors of the plug, wherein the cover is configured and arranged to extend over at least a portion of a back surface, a front surface, and each of four side surfaces of the electronic device to hold the electronic device within the cover.



99.     The aXtion Volt products further comprise a docking cradle configured to receive the cover and comprising a base receiver to receive the cover and a docking connector disposed on the base receiver and comprising a plurality of contacts positioned to connect with one or more of the plurality of contacts of the contactor of the protective cover, the docking connector defining a rim to guide proper mating of the contactor to the docking connector.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW



100. Additionally, the contactor of the protective cover of the aXtion Volt products comprises a female portion and the docking connector of the docking cradle of the aXtion Volt products comprises a male portion.




101. Upon information and belief, Joy Factory has induced and continues to induce infringement of one or more claims of the '026 patent, including but not limited to claim 11, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '026 patent. The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '026 patent by such customers or third parties. Joy Factory's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended

25

use through its own and third-party websites (for example, https://product.thejoyfactory.com/axtion-volt-wireless-charging; offering technical support to its customers for these products (for example, https://thejoyfactory.com/contact-support/); and providing instructions on how to use these products (for example, https://datasheet-frontendtjf-v1.netlify.app/?id=2053&sku=DEU322).

102.    Additionally, upon information and belief, Joy Factory infringes one or more claims of the '026 patent, including but not limited to claim 11, under 35 U.S.C. § 271(f)(1) by supplying, or causing to be supplied, in or from the United States all or a substantial portion of the components of the patented invention, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components—as described in the preceding paragraph—outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

103.    Upon information and belief, Joy Factory has contributed to and continues to contribute to the infringement of one or more claims of the '026 patent, including but not limited to claim 11, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles.  These components supplied by Joy Factory are key components to the docking systems claimed in the '026 patent.  When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '026 patent.  Upon information and belief, Joy Factory supplied and continues to supply these components, with the knowledge of the '026 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '026 patent.  Further, Joy Factory knows that these components are especially made and/or especially adapted for use as claimed in the

'026 patent. Moreover, Joy Factory knows that there is no substantial non-infringing use of these components.

104. Additionally, upon information and belief, Joy Factory infringes one or more claims of the '026 patent, including but not limited to claim 11, under 35 U.S.C. § 271(f)(2) by supplying, or causing to be supplied, in or from the United States components of the patented invention that are especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use—as described in the preceding paragraph—where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

105. As a direct and proximate consequence of Joy Factory's infringement of the '026 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless Joy Factory is enjoined from infringing the '026 patent.

106. Joy Factory has had actual knowledge of the '026 patent and its infringement thereof since at least August 11, 2023, when NPI notified Joy Factory that the manufacture, sale, offering for sale, importation, and/or use of the aXtion Volt products infringes the '026 patent. A true and correct copy of the NPI notice letter is attached as **Exhibit H**.

107. Upon information and belief, Joy Factory's continued infringement of the '026 patent is willful.

## COUNT VI
## INFRINGEMENT OF UNITED STATES PATENT NO. 11,165,458

108. NPI realleges and incorporates by reference the allegations in paragraphs 1–107 above.

109. Joy Factory has directly infringed and continues to directly infringe at

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

27

least claim 12 of the '458 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to the Joy Factory's aXtion Volt line of products.

110. Inspection of the aXtion Volt line of products demonstrates that they meet each and every element of claim 12 of the '458 patent, either literally or by the doctrine of equivalents.

111. For example, Joy Factory's website describes its aXtion Volt line of products as comprising the protective arrangement of claim 12:



112. The aXtion Volt products shown above are exemplary.

113. As shown above, the aXtion Volt products comprise a removable cover comprising a panel and a skirt that meets edges of the panel, the removable cover comprising an exterior surface and an adapter opening through the exterior surface, wherein the panel and the skirt form an interior cavity therebetween, and the skirt forming a mouth opening that communicates with the interior cavity, wherein the interior cavity is configured and arranged to receive an electronic

device.

114. The aXtion Volt products further include an adapter comprising a male plug extending in a longitudinal direction into the interior cavity of the removable cover in an arrangement for mating with a female socket of the electronic device and a contactor opposite the male plug and configured for exposure through the adapter opening in the exterior surface of the removable cover, the male plug comprising a plurality of connectors for mating with connectors in the female socket of the electronic device, the contactor comprising a lateral surface recessed relative to the removable cover and a plurality of electrical contacts arranged on the lateral surface and configured for exposure through the adapter opening of the removable cover, wherein the electrical contacts are electrically coupled to one or more of the connectors of the male plug, wherein the longitudinal direction of the male plug is perpendicular to the lateral surface of the contactor.



115. Upon information and belief, Joy Factory has induced and continues to induce infringement of one or more claims of the '458 patent, including but not limited to claim 12, by inducing its customers and other third parties to use without authorization the protective arrangements claimed in the '458 patent. The use, without authorization, of the protective arrangements constitutes infringement,

literally or under the doctrine of equivalents, of one or more claims of the '458 patent by such customers or third parties. Joy Factory's acts of inducement include: providing its customers with the protective arrangements and intending customers to use them; advertising these products and their intended use through its own and third-party websites (for example, https://product.thejoyfactory.com/axtion-volt-wireless-charging; offering technical support to its customers for these products (for example, https://thejoyfactory.com/contact-support/); and providing instructions on how to use these products (for example, https://datasheet-frontendtjf-v1.netlify.app/?id=2053&sku=DEU322).

116.   Additionally, upon information and belief, Joy Factory infringes one or more claims of the '458 patent, including but not limited to claim 12, under 35 U.S.C. § 271(f)(1) by supplying, or causing to be supplied, in or from the United States all or a substantial portion of the components of the patented invention, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components—as described in the preceding paragraph—outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

117.   Upon information and belief, Joy Factory has contributed to and continues to contribute to the infringement of one or more claims of the '458 patent, including but not limited to claim 20, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to the aXtion Volt products. These components supplied by Joy Factory are key components to the docking systems claimed in the '458 patent. When, for example, a protective covers is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '458 patent. Upon information and belief, Joy Factory supplied and continues to supply these components with the knowledge of the '458 patent and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

with the knowledge that these components constitute material parts of the inventions claimed in the '458 patent. Further, Joy Factory knows that these components are especially made and/or especially adapted for use as claimed in the '458 patent. Moreover, Joy Factory knows that there is no substantial non-infringing use of these components.

118. Additionally, upon information and belief, Joy Factory infringes one or more claims of the '458 patent, including but not limited to claim 20, under 35 U.S.C. § 271(f)(2) by supplying, or causing to be supplied, in or from the United States components of the patented invention that are especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use—as described in the preceding paragraph—where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

119. As a direct and proximate consequence of Joy Factory's infringement of the '458 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless Joy Factory is enjoined from infringing the '458 patent.

120. Joy Factory has had actual knowledge of the '458 patent and its infringement thereof since at least August 11, 2023, when NPI notified Joy Factory that the manufacture, sale, offering for sale, importation, and/or use of the aXtion Volt products infringes the '458 patent. A true and correct copy of the NPI notice letter is attached as **Exhibit H**.

121. Upon information and belief, Joy Factory's continued infringement of the '458 patent is willful.

# COUNT VII

## PROVISIONAL DAMAGES RELATED TO THE '728 APPLICATION

## (FUTURE INFRINGEMENT OF UNITED STATES PATENT \*\*,\*\*\*,\*\*\*)

122. NPI realleges and incorporates by reference the allegations in paragraphs 1–121 above.

123. Joy Factory's products fall within the scope of claim 9 of the '728 application, and Joy Factory will infringe claim \*\* of U.S. Patent No. \*\*,\*\*\*,\*\*\* upon issuance, by using within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to the Joy Factory's aXtion Volt line of products.

124. Inspection of the aXtion Volt line of products demonstrates that they meet each and every element of claim 9 of the '728 application, either literally or by the doctrine of equivalents.

125. For example, Joy Factory's website describes its aXtion Volt line of products as comprising the protective arrangement of claim 9:



126. The aXtion Volt products shown above are exemplary.

127. As shown above, the aXtion Volt products comprise a removable cover comprising a panel and a skirt that meets edges of the panel, the removable cover comprising an exterior surface and an adapter opening in the exterior surface, wherein the panel and the skirt form an interior cavity therebetween with the skirt forming a mouth opening that communicates with the interior cavity, wherein the interior cavity is configured and arranged to receive an electronic device.

128. The aXtion Volt products further comprise an adapter comprising a plurality of first contacts accessible within the interior cavity of the removable cover in an arrangement for mating with one or more device contacts of the electronic device and a contactor configured for exposure through the adapter opening in the exterior surface of the removable cover, the contactor comprising a lateral surface opposite the first contacts and a plurality of second contacts arranged on the lateral surface and configured for exposure through the adapter opening of the removable cover, wherein the second contacts are electrically coupled to the first contacts, wherein the panel extends perpendicularly to the lateral surface of the contactor.



129. Upon information and belief, Joy Factory will induce infringement of one or more claims U.S. Patent No. **,***,***, e.g., claim 9 of the '728

application, by inducing its customers and other third parties to use without authorization the arrangements recited in the '728 application. The use, without authorization, of the recited arrangement will constitute infringement, literally or under the doctrine of equivalents, of one or more claims of U.S. Patent No. **,***,*** upon issuance by such customers or third parties. Joy Factory's acts of inducement include: providing its customers with the claimed arrangements and intending customers to use the them as intended; advertising these products and their intended use through its own and third-party websites (for example, https://product.thejoyfactory.com/axtion-volt-wireless-charging; offering technical support to its customers for these products (for example, https://thejoyfactory.com/contact-support/); and providing instructions on how to use these products (for example, https://datasheet-frontendtjf-v1.netlify.app/?id=2053&sku=DEU322).

130. Additionally, upon information and belief, Joy Factory will infringe one or more claims of the U.S. Patent No. **,***,***, e.g., claim 9 of the '728 application, under 35 U.S.C. § 271(f)(1) by supplying, or causing to be supplied, in or from the United States all or a substantial portion of the components of the patented invention, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components—as described in the preceding paragraph—outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

131. Upon information and belief, Joy Factory will contribute to the infringement of one or more claims of U.S. Patent No. **,***,***, e.g., claim 16 of the '728 application by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to the aXtion Volt protective covers and docking stations. These components supplied by Joy Factory are key components to the systems recited in the '728 application. When, for example, a

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

34

protective cover is used with a docking cradle, the claimed systems will be formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the U.S. Patent No. **,***,***.  Upon information and belief, Joy Factory supplied and continues to supply these components, with knowledge of the '728 application and with the knowledge that these components constitute material parts of the inventions recited in the '728 application.  Further, Joy Factory knows that these components are especially made and/or especially adapted for use as recited in the '728 application.  Moreover, Joy Factory knows that there is no substantial non-infringing use of these components.

132.   Additionally, upon information and belief, Joy Factory will infringe one or more claims of the U.S. Patent No. **,***,***, e.g., claim 16 of the '728 application, under 35 U.S.C. § 271(f)(2) by supplying, or causing to be supplied, in or from the United States components of the patented invention that are especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use—as described in the preceding paragraph—where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

133.   As a direct and proximate consequence of Joy Factory's future infringement of U.S. Patent No. **,***,***, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless Joy Factory is enjoined from infringing U.S. Patent No. **,***,***.

134.   Joy Factory has had actual knowledge of the '728 application and its potential future infringement of the claims recited therein since at least August 11, 2023, when NPI notified Joy Factory that the manufacture, sale, offering for sale, importation, and/or use of the aXtion Volt products fall within the scope of claims recited in the '728 application and will constitute infringement upon issuance of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

35

such claims. A true and correct copy of the NPI's notice letter is attached as **Exhibit H**.

135. Upon information and belief, Joy Factory's continued infringement of U.S. Patent No. \*\*,\*\*\*,\*\*\* is willful.

## **PRAYER FOR RELIEF**

WHEREFORE, NPI prays for the following relief:

a. A judgment that Joy Factory has infringed the '895, '279, '639, '535, '026, and '458 patents, and will infringe U.S. Patent No. \*\*,\*\*\*,\*\*\* (upon issuance);

b. An order preliminarily and permanently enjoining and restraining Joy Factory, its officers, directors, agents, servants, employees, licensees, attorneys, and all other persons acting under or through them, directly or indirectly, from infringing the '895, '279, '639, '535, '026, and '458 patents, and U.S. Patent No. \*\*,\*\*\*,\*\*\*;

c. A judgment and order requiring that Joy Factory pay damages under 35 U.S.C. § 284, with prejudgment and post-judgment interest;

d. A judgment that Joy Factory's infringement has been willful, and that damages are increased three-fold;

e. A judgment and order directing Joy Factory to pay the costs of this action, including all disbursements and attorney fees as provided by 35 U.S.C. § 285, with prejudgment interest; and

f. Such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

NPI hereby demands a trial by jury of all issues so triable.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Dated:  October 11, 2023

Respectfully submitted,

FENWICK & WEST LLP

By:/s/*Jonathan G. Tamimi*

Jonathan G. Tamimi (CSB No. 305493)

Attorneys for Plaintiff
NATIONAL PRODUCTS INC.